GRUENDER, Circuit Judge.
A federal grand jury returned an indictment charging Velma Míreles with one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i). Pursuant to a plea agreement, the Government agreed to move to dismiss the indictment, and Míreles agreed to waive indictment and plead guilty to one count of misprision of a felony, a violation of 18 U.S.C. § 4. The district court[1] sentenced Míreles to 18 months’ imprisonment and one year of supervised release. Míreles appeals her sentence.
I. BACKGROUND
In January 2008, Míreles agreed to transport the cash proceeds of illegal drug sales from Decatur, Alabama, to Rio Grande City, Texas. On January 29, 2008, Míreles left her home in San Antonio, Texas, and drove with Rene Rodriguez to Decatur, Alabama. Míreles picked up the drug money in a motel room in Decatur and concealed the cash in the waistband of her pantyhose. She and Rodriguez then began driving to Rio Grande City.
On February 1, 2008, Arkansas State Police Corporal Vic Coleman stopped Rodriguez and Míreles near Lonoke, Arkansas, for speeding. Corporal Coleman searched the vehicle. During the search, he noticed that Míreles appeared to be hiding something under her clothing. Corporal Coleman frisked Míreles and discovered that she was concealing several bundles of cash, totaling $29,920. Míreles admitted that she knew the money was drug proceeds and that she had been promised $2,000 as payment for transporting it to Rio Grande City.
Míreles was indicted on one count of conspiracy to commit money laundering. Based on a plea agreement with the Government, Míreles instead pled guilty to a superseding information charging her with one count of misprision of a felony. The Presentence Investigation Report (PSR) calculated an advisory sentencing guidelines range of 0 to 6 months’ imprisonment. The district court adopted the PSR but concluded that Mireles’s “criminal history is not adequately represented and that her guideline [range] does not adequately reflect the seriousness of her conduct.” The district court sentenced Míreles to 18 months’ imprisonment and one year of supervised release.
*1012 II. DISCUSSION
Mireles first argues that the district court procedurally erred by failing to consider a traditional guidelines departure before imposing a sentence outside the guidelines range. In determining an appropriate sentence, “the district court ordinarily should determine first the appropriate guideline range, then decide if the guidelines permit a traditional departure, and finally determine whether the § 3553(a) factors justify a variance from this ‘guidelines sentence.’ ” United States v. Miller, 479 F.3d 984, 986 (8th Cir.2007) (citing United States v. Haack, 403 F.3d 997, 1002-03 (8th Cir.2005)).[2] Míreles concedes that the district court properly calculated the advisory guidelines range but argues that the court failed to determine whether the guidelines permitted a traditional departure before sentencing her to 18 months’ imprisonment.
We addressed a similar allegation of procedural error in United States v. Maurstad, 454 F.3d 787 (8th Cir.2006). The district court characterized Maurstad’s sentence as one that “used to be called [an] upward departure,” but it “did not explicitly refer to the Guidelines departure provisions.” Id. at 790. Thus, it was “unclear whether the district court intended to impose an upward departure under the Guidelines or an upward variance outside of the Guidelines.” Id. While reiterating that “departures under the Guidelines should still be considered after Booker,” we concluded that the district court’s “failure to explicitly consider a departure under the Guidelines represents clear but harmless error” because “the same considerations that render the upward variance reasonable could have also justified an upward departure under the Guidelines.” Id.
Similarly, in United States v. Zeigler, 463 F.3d 814 (8th Cir.2006), we observed that it was “unclear whether the district court imposed an upward departure or an upward variance,” because “the district court did not engage in a traditional departure analysis as contemplated by Haack,” id. at 818. We held that this error was also harmless, in part because “the considerations made by the district court ‘could have justified a traditional upward departure under the guidelines.’” Id. (quoting United States v. Lyons, 450 F.3d 834, 837 (8th Cir.2006)). But cf. United States v. Washington, 515 F.3d 861, 866-67 (8th Cir.2008) (noting that the district court “described its sentence as a variance or upward departure ... and drew no distinctions between the two terms” but concluding that the district court “committed no significant procedural error” because the court “appropriately considered [and explained] the relevant factors of § 3553(a)” (citation and internal quotation marks omitted)).
In Maurstad and Zeigler, we applied the harmless error standard, apparently because the alleged errors had been preserved. Here, however, Míreles failed to raise any objection to the alleged procedural error before the district court, so our review is for plain error. See United States v. Burnette, 518 F.3d 942, 946 (8th Cir.2008) (citing United States v. Pirani, 406 F.3d 543, 550 (8th Cir.2005) (en banc)). “Under plain error review, the defendant must show: (1) an error; (2) that is plain; and (3) that affects substantial rights.” United States v. Bain, 586 F.3d 634, 640 *1013 (8th Cir.2009) (per curiam) (quoting United States v. Vaughn, 519 F.3d 802, 804 (8th Cir.2008)), petition for cert. filed, 78 U.S.L.W. 3629 (2010) (No. 09-1242). “A plain error will not be corrected unless (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings.” Id. (citing United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). “An error affects a substantial right if it is prejudicial.” Id. (citing Olano, 507 U.S. at 734, 113 S.Ct. 1770). “A sentencing error is prejudicial if there is a reasonable probability the defendant would have received a lighter sentence but for the error.” Id. (citing Pirani, 406 F.3d at 552).
Míreles acknowledges that “an upward departure may be warranted” under the Guidelines when “reliable information indicates that the defendant’s criminal history category substantially under-represents the seriousness of the defendant’s criminal history or the likelihood that the defendant will commit other crimes.... ” See U.S.S.G. § 4A1.3(a) But Míreles contends that she would have received a more favorable sentence if the district court had engaged in a traditional departure analysis under § 4A1.3(a).
To determine the extent of a departure under § 4A1.3(a)(1), the district court “first must proceed along the criminal history axis of the sentencing matrix, comparing the defendant’s criminal history with the criminal histories of other offenders in each category.” United States v. Walking Eagle, 553 F.3d 654, 657 (8th Cir.2009) (quoting United States v. Day, 998 F.2d 622, 625 (8th Cir.1993)). “If the district court reaches Category VI, which is the highest criminal history category, but determines ‘the Guidelines range is still inadequate, it may impose a reasonable sentence above the Category VI range.’ ” Id. (quoting Day, 998 F.2d at 625). At that point, “the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case.” U.S.S.G. § 4A1.3(a)(4)(B).
Here, the district court calculated Mireles’s advisory guidelines range of 0 to 6 months based on an offense level of 2 and a criminal history category of III. To reach a sentence of 18 months under the guidelines, the district court would have needed to determine first that Míreles, notwithstanding her four criminal history points, belonged in criminal history category VI, see id. § 4A1.3(a)(4)(A). Such a finding would have resulted in a guidelines range of 1 to 7 months, so the district court also would have needed to move down the sentencing table from offense level 2 to offense level 6 before a sentence of 18 months’ imprisonment would qualify as a departure under § 4A1.3(a).
Míreles argues that the district court would not have imposed such an “egregious” departure if it had utilized the appropriate departure procedure under § 4A1.3(a), but she points to no evidence supporting this speculative contention, and we find none. This failure to demonstrate prejudice is fatal to Mireles’s claim. See United States v. Chauncey, 420 F.3d 864, 878 (8th Cir.2005) (“[W]here the effect of the error on the result in the district court is uncertain or indeterminate—where we would have to speculate'—the appellant has not met his burden of showing a reasonable probability that the result would have been different but for the error.” (alteration in original) (quoting Pirani, 406 F.3d at 553)).
Even if this issue had been preserved, we would conclude that any error was harmless. The district court specifically found that “[Mireles’s] criminal history is not adequately represented” and pro *1014 vided support for its finding. Noting that Míreles had four prior convictions for offenses related to drug trafficking, the district court stated at sentencing that “it is very seldom when we see someone who has been in drug trafficking for as many years or has as many convictions as [Míreles does] over that time span.” The district court also observed that Míreles had only received criminal history points for two of her prior convictions and expressed concern about Mireles’s recidivist tendencies, even to the point of lamenting that “[s]he has been at this since 1977.”
Based on the factors identified by the district court, we are satisfied that the district court would have been justified in imposing an 18-month sentence as a departure under § 4A1.3(a). See Zeigler, 463 F.3d at 818; Maurstad, 454 F.3d at 790. At a minimum, it is clear that Míreles has not shown “a reasonable probability [that she] would have received a lighter sentence but for the error,” see Bain, 586 F.3d at 640 (citing Pirani, 406 F.3d at 552). Thus, we conclude that Míreles has failed to establish reversible plain error.[3]
Finally, Míreles argues that the district court improperly based its sentence on a finding that she committed “a drug trafficking offense” when, in fact, she had been convicted only of misprision of a felony. Again, our review is for plain error because Míreles failed to raise this issue before the district court. See Burnette, 518 F.3d at 946. Contrary to Mireles’s assertion, the district court did not specifically find that Míreles committed “a drug trafficking offense.” Rather, the court found that Mireles’s conduct was related to drug trafficking. The court stated that “[d]rug trafficking is an extremely serious offense Ms. Míreles has been involved in on more than one occasion,” that Míreles “has been involved with this type of activity over the years,” and that “[s]he has been at this since 1977.” (Emphasis added.) The PSR provided ample factual support for these findings. In addition to detailing Mireles’s prior convictions, the PSR stated that Míreles admitted to the officer who arrested her that she was transporting “drug proceeds.” Míreles did not object to the PSR, and we have “repeatedly held ‘that unless a defendant objects to a specific factual allegation contained in the PSR, the court may accept that fact as true for sentencing purposes.’ ” United States v. Oaks, 606 F.3d 530, 541 (8th Cir.2010) (quoting United States v. Moser, 168 F.3d 1130, 1132 (8th Cir.1999)).
*1015 In finding that Mireles’s knowing transportation of drug proceeds was the latest in a decades-long string of offenses related to drug trafficking, the district court employed a common understanding of the term “drug trafficking.” We likewise would consider transporting the cash proceeds of illegal drug transactions to be related to drug trafficking. See Smalley, 354 F.3d at 339. Accordingly, we find no error, plain or otherwise, in the district court’s reliance on this factor in sentencing Mireles.[4]
III. CONCLUSION
For the foregoing reasons, we affirm the sentence imposed by the district court.

. The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

. " 'Departure' is a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines." Irizarry v. United States, 553 U.S. 708, 128 S.Ct. 2198, 2202, 171 L.Ed.2d 28 (2008). A variance, on the other hand, is a "non-Guidelines sentence[] based on the factors enumerated in 18 U.S.C. § 3553(a).” United States v. Solis-Bermudez, 501 F.3d 882, 884 (8th Cir.2007).

. Based on the district court’s statement that Mireles's "criminal history is not adequately represented and that her guideline [range] does not adequately reflect the seriousness of her conduct,” we conclude that the court also could have departed under U.S.S.G. § 5K2.21, which allows the court to depart upward "to reflect the actual seriousness of the offense based on conduct ... underlying a charge dismissed ... or underlying a potential charge not pursued....” The district court may depart upward under § 5K2.21 if the underlying conduct "did not enter into the determination of the applicable guideline range,” see § 5K2.21, and if the conduct is established by a preponderance of the evidence, see United States v. Bates, 561 F.3d 754, 756 (8th Cir.2009). Míreles does not argue that the court based its calculation of her advisory guidelines sentencing range on the conduct underlying the dismissed money laundering charge. Furthermore, Mireles admitted when she was arrested that she was transporting "drug proceeds.” Thus, we conclude that the district court would have been justified under § 5K2.21 in departing to 18 months to reflect adequately the seriousness of Mireles's conduct, i.e., her knowing transportation of the cash proceeds of illegal drug transactions, cf. Smalley v. Ashcroft, 354 F.3d 332, 339 (5th Cir.2003) (observing that "[m]oney laundering provides drug dealers with the means to carry on their unlawful drug trade”).

. Mireles nevertheless argues that “the mere fact that the money being laundered was drug money” does not establish by a preponderance of the evidence that she committed "a drug trafficking offense.” In making this argument, Mireles relies on the definition of "drug trafficking offense” in the application notes of U.S.S.G. § 2L1.2(b)(1), the sentencing guideline applicable to the offense of unlawfully entering or remaining in the United States. The district court was not, of course, bound by the definition of “drug trafficking offense” in a section of the guidelines that did not apply to Mireles's offense.